FILED
2016 Feb-17  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RODNEY G. BROWN, )
)
  Plaintiff, )
)
v. )  Case No. 2:12-cv-04074-SGC
)
SHELBY COUNTY BOARD OF )
EDUCATION, )
)
  Defendant. )

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the motion for summary judgment filed by defendant, Shelby County Board of Education's ("the Board"). (Doc. 17). Plaintiff Rodney G. Brown ("Brown") filed suit against the Board, alleging violation of his right to equal protection under 42. U.S.C. § 1983 and racial discrimination, religious discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. (Docs. 1, 34). The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 39). For the reasons stated below, the Board's motion for summary judgment will be granted.

# I.    PROCEDURAL AND FACTUAL BACKGROUND[1]

## A.    <u>Background</u>

Defendant, the Shelby County Board of Education, is comprised of elected officials who are responsible for the policy and governance of the public schools in Shelby County, Alabama. (Doc. 34 ¶7).

Plaintiff Rodney Brown is an African-American male who has been employed by the Board since January 2000. (Doc. 34 ¶¶ 8 & 9). Prior to entering the education field, Brown worked as a case manager for Chilton/Shelby Mental Health for nine years. (Doc. 18-2 p.21).[2] In the fall of 2001, Brown began working as a special education teacher at Thompson High School in Shelby County, Alabama. (*Id.* at ¶9). He did not yet have his teaching certificate but was hired on a "special certificate," which allowed him to teach while working on his certificate. (Doc. 18-1 p.18). Brown completed his Master's degree in special education in 2005 and received his teaching certificate in 2006. (Doc. 18-1 pp.18-20). He also received his certification in education administration in 2006. (Doc. 34 ¶9; Doc. 19-4 ¶4).

---

[1] Consistent with the summary judgment standard, the court presents the facts in the light most favorable to the plaintiff.

[2] Filed under seal.

From 2001 to June 2013, Brown worked as a special education teacher at Thompson High School.[3] (Doc. 18-2 p.20). According to Brown, leadership roles within his school, such as serving on committees or coaching student teams, were only by invitation from the principal. (Doc. 27-1 ¶14; *see also* Doc. 22-1 p.16 (James Miller, stating that when he was principal, he would ask one person to lead a committee and that person would seek volunteers)). Former Thompson High School Principal Robin Thomas testified, "Oftentimes, if there are committees that are to be established, you would invite people to volunteer for those." (Doc. 23-1 p.65). Danny Steele stated that as principal he sometimes appointed a committee and sometimes asked for volunteers, but that there was not a set procedure. (Doc. 22-5 p.13). Brown was never invited by his principals and never volunteered to head a committee or coach a team. (Doc. 27-1 ¶15). Brown also was never invited and never volunteered to serve as substitute principal or assistant principal for a day when an administrator was absent. (*Id.*).

Between 2007 and 2013, Brown applied for thirteen (13) assistant principal positions and a single principal position with the Shelby County schools. (Doc. 18-1 p.46; Doc. 18-2 pp.29, 53; Doc. 19-4 ¶6). Brown did not receive any of these positions. In all but one instance, a white candidate was selected instead of Brown.

---

[3] On July 1, 2013, Alabaster City Schools, including Thompson High School, separated from the Shelby County school system. (Doc. 21-1 pp.22-26). Thus, Brown currently works for Alabaster City Schools.

The process of selecting principals and assistant principals within the Shelby County school system begins with the posting of a notice of vacancy. (Doc. 22-2 p.18). Candidates submit applications, which since 2011 must be done online. (Doc. 22-1 pp.28-30). A panel is then convened to review applications and conduct interviews. (*Id.* at 23-24). Based on the application review, interviews, references, and/or the panel's own knowledge of the candidates, the panel comes to a consensus and makes a recommendation to the Superintendent. (Doc. 20-1 pp.40-43; Doc. 19-4 ¶9). The Superintendent makes the formal recommendation to the Board. (Doc. 21-1 p.11). In reviewing the recommendation, the Board receives information regarding the number of people who applied for the vacancy, how many candidates were interviewed, the names of the people on the panel, and the name of the successful candidate with a brief explanation of that candidate's experience and qualifications. (Doc. 21-3 p.44). The Board then votes whether to accept or reject the recommendation. (Doc. 21-2 p.22).

In 2009, AdvancEd, the accreditation agency for all school systems, evaluated the Shelby County school system. (Doc. 22-1 pp.79-83; Doc. 22-4 pp.16-42; Doc. 27-2 pp.22-24). It criticized the Board's recruiting and retention of minorities and issued a report noting the "minimal inclusion of minorities in teaching and/or administrative positions." (*Id*). Leland Doebler, Chairman of the Board at that time, testified that he "absolutely" agreed with the assessment. (Doc.

4

27-2 p. 24). The Board submitted a progress report to AdvancEd in 2011 noting the continuing challenges to minority hiring, including "the interview process" and "community biases." (Doc. 22-4 pp.43-51). As of June 2012, there were no black male principals or assistant principals within the Shelby County school system. (Doc. 27-2 p.57).

### B. Brown's Job Applications From 2009-2012

In 2009, Brown applied for the position of assistant principal of the Thompson Sixth Grade School. (Doc. 18-1 pp.54-55). In the vacancy notice, the general job qualifications for assistant principal were stated as:

> 1. Must hold or be eligible for a valid Alabama certificate for superintendent-principal, or principal.
>
> 2. Successful experience as a teacher in public education.
>
> 3. Supervisory or administrative experience preferable.
>
> 4. Such alternatives to the above qualifications as the Board may find appropriate and acceptable.

(Doc.22-3 p.28). The panel received 113 applications for the position and interviewed five (5) candidates, all of whom, unlike Brown, had prior elementary or middle school experience. (Doc. 22-2 pp.26-33). The panel ultimately recommended the hiring of Shannon Rose (white), who had thirteen (13) years of experience in public education, including eleven (11) years in elementary schools, two (2) years in administration, and nine (9) years with the Shelby County school system. (Doc. 22-2 p.33; Doc. 22-1 ¶15).

In 2009, Brown applied for the position of assistant principal at Oak Mountain High School. (Doc. 18-1 p.58). According to Brown, at that time the administration of Oak Mountain High School included no African-Americans. (Doc. 27-1 ¶19). The panel received ninety-three (93) applications and interviewed ten (10) candidates, including Brown. (Doc. 22-2 pp.34-43). The panel ultimately recommended the hiring of Amy Fineburg (white). (Doc. 19-2 ¶5; Doc. 22-2 p.43). Fineburg had fourteen (14) years of experience and a Master's degree in educational administration (and was a doctoral candidate in educational psychology, soon to defend her thesis). (Doc. 18-1 pp.60-61). Fineburg had also co-authored a text book and held a number of leadership roles. (Doc. 19-2). Joan Doyle, who served on the selection panel, averred that the selection committee was particularly impressed with Fineburg's prior experience on the SACS/Blue Ribbon Schools Steering Committee because Oak Mountain High School was considering that process. (*Id*).

Also in 2009, Brown applied for the position of assistant principal at Riverchase Middle School. (Doc. 18-1 p.62). The panel received 108 applications and interviewed seven (7) candidates. (Doc. 19-1 ¶6; Doc. 22-2 pp.44-54). All of the interviewed candidates had prior experience in middle schools; Brown did not. (Doc. 22-2 p.53). The panel recommended the hiring of Susan Hyatt (white), who had fifteen (15) years of experience, including two (2) years at the middle school

level. (Doc. 19-1 ¶7; Doc. 22-2 p.54). She had two (2) Master's degrees (in English and in educational administration) and leadership experience. (Doc. 19-1 ¶7). Lewis Brooks, who served on the selection panel, stated that Hyatt's prior experience as a reading specialist with Alabama Reading Initiative was particularly important, because Riverchase Middle School had a high number of students for whom English was a second language. (Doc. 19-1 ¶¶8-9).

In 2010, Brown applied for the position of assistant principal at Montevallo Middle School. (Doc. 18-1 p.67). The panel received 117 applications and interviewed five (5) candidates, including Brown. (Doc. 19-1 ¶11; Doc. 22-2 pp.55-63). The panel recommended the hiring of Shellie Ritch (white). (Doc. 19-1 ¶12). Unlike Brown, Ritch had prior experience at the middle school level, had served on/chaired various committees, and sponsored school clubs and teams. (*Id.* at ¶¶12-15; Doc. 19-3 ¶¶8-10). Sheila Lewis and Lewis Brooks, both of whom served on the selection committee, recalled that Brown's interview was not as insightful or in-depth as Ritch's interview. (Doc. 19-1 ¶¶12, 13, 15; Doc. 19-3 ¶¶ 8-10). Brown disputes their recollections, stating that his interview was in-depth. (Doc. 27-1 ¶23).

Also in 2010, Brown applied for the position of alternative programs principal/building administrator at the Alternative School. (Doc. 18-1 p.74). The

qualifications for this position were listed in the job vacancy announcement as follows:

1.  A master's degree with a major in educational administration.

2.  A valid state certificate as superintendent/principal.

3.  At least five years successful experience in public education.

4.  Knowledge of principles and effective practices of alternative school programs and strategies for working with at-risk youth.

5. Such alternatives to the above qualifications as the Board may find appropriate and acceptable.

(Doc. 20-3 p.28). The panel received seventy (70) applications and interviewed six (6) candidates. (Doc. 19-1 ¶18; Doc. 20-3 pp.27-42). All of the interviewed candidates had prior experience at the administrative level, whereas Brown did not. (Doc. 19-1 ¶18; Doc. 18-1 p.74). The panel recommended the hiring of George Theodore (white), who held a doctorate in educational leadership, had a valid principal certificate, and had more than thirty (30) years of experience in public education, including twelve (12) years as a high school principal in the Shelby County school system. (Doc. 19-1 ¶19; Doc. 20-3 p.37). However, according to Brown, Theodore was not qualified because he did not complete the online application, as required, and his certification renewal status was uncertain at the time of his hiring. (Doc. 20-3 p.41).

In January 2011, Brown applied for the position of assistant principal at Oak Mountain High School. (Doc. 18-1 pp.90-91). The panel received eighty (80)

applications and interviewed five (5) candidates, including Brown. (Doc. 22-2 pp.64-71). The panel ultimately recommended for hire Donald Clayton (white), who had a Master's degree in educational administration and nine (9) years of experience in public education at Oak Mountain High School. (Doc. 22-2 pp.70-71). Clayton had also served as Oak Mountain High School's athletic director for two (2) years. (*Id*). Joan Doyle, who served on the selection committee, stated that Brown was the weakest candidate based on his resume and interview, his interview was brief and provided little insight into his leadership abilities, and his resume listed no leadership experience. (Doc. 19-2 ¶¶11-12). Brown's resume does list a leadership certificate. (Doc. 18-2 pp.20-21;[4] Doc. 27-1 ¶27). Brown testified that James Miller, who also served on the selection committee, called him after the interview to tell Brown that he had "interviewed well." (Doc. 18-1 pp.89-90; *see also* Doc. 22-1 p.14). Miller testified that Brown's responses to interview questions were limited. (Doc. 22-1 p.14).

In December 2011, Brown applied for another assistant principal position at Oak Mountain High School. (Doc. 18-1 p.82). The panel received 118 applications and interviewed five (5) candidates.[5] (Doc. 22-3 pp.1-11). The panel recommended

---

[4] Filed under seal.

[5] Brown believed he was interviewed for this position; however, the Board has no record indicating he was interviewed. Brown could not recall anything about said interview. (Doc. 18-1 pp.83-85).

April Brand (white) for the position. (Doc. 22-3 p.11). Brand had a Master's degree in secondary education, a certificate in educational administration, was working on her doctorate in instructional leadership, and had fifteen (15) years of experience in public education. (Doc. 19-2 ¶15). Brand also had leadership experience coaching various athletic teams, serving on numerous school committees, and working as a teacher's instructional coach. *Id.*

In 2012, Brown applied for a position as assistant principal at Thompson High School. (Doc. 18-1 pp.96-97). The Board posted two assistant principal positions at the same time − one 12-month position and one 10.5-month position. (Doc. 19-6 ¶4).[6] The Board filled the 12-month position, without the need for interviews, with Angela McKnight (African-American). *Id.* at ¶5. McKnight had served as assistant principal at Thompson High School (in a 10.5-month position) for the previous six (6) years and had fifteen (15) years of total experience in public education. *Id.* For the remaining 10.5-month position, the panel received 117 applications and interviewed four (4) candidates, including Brown. *Id.* at ¶6. In fact, all three (3) candidates for the position who were then on staff at Thompson High School (Michelle Bell, Andrew Warman, and Brown) were interviewed by the panel at the request of Principal Danny Steele, who was also on the selection committee. (Doc. 22-5 pp.23-26).

---

[6] Although it is not entirely clear whether Brown applied for both positions, he considered his name to be "in the hat" for both.  (Doc. 18-1 at 95, 97).

The panel ultimately recommended the hiring of Jeff Nichols (white), who had a Master's degree in education and eighteen (18) years of experience in public education, including five (5) years as an assistant principal. (Doc. 19-6 ¶7). Panel members scored Brown's interview significantly lower than Nichols's (and every other candidate's). (Doc. 19-6 ¶8; Doc. 19-4 ¶18; Doc. 20-5 p.13). Brown testified that members of the selection panel asked him about his church and his preaching topics during his interview; in fact, during the interview Brown used his starting and building of a church as an example of his leadership skills. (Doc. 18-1 pp.99, 106-08). However, the panelists' questions about his faith (Pentecostal) and their reactions made him feel like a laughingstock and like he was not taken seriously. (Doc. 27-1 ¶32).

## C.   Brown's First EEOC Charge

Brown filed a charge with the Equal Employment Opportunity Commission ("EEOC") on April 11, 2012. (Doc. 18-2 p.22).[7] Brown alleged he had applied for numerous administrative positions for which white candidates had been hired and that he had a good faith belief he was just as qualified as the successful white candidates. *Id.* Brown also alleged he had been asked questions about his pastoral duties during an interview for one of the administrative positions. *Id.* Thus, Brown alleged he had been denied promotion because of his race and his religion. *Id.* The

---

[7] Filed under seal.

Human Resources Department responded to the charge, without involving any Board members or members of the selection panels who had reviewed Brown's applications (except for James Miller, who was the Assistant Superintendent of Human Resources and served on the selection panels for some of the jobs Brown sought). (Doc. 19-4 ¶19). The EEOC issued a Dismissal and Notice of Rights on September 12, 2012, and Brown filed a complaint with this court on December 11, 2012. (Doc. 1).

### D.   <u>After the EEOC Charge</u>

After filing his EEOC charge, Brown received a visitor at Thompson High School. Lewis Brooks, who was the Middle School Coordinator, visited in May 2012 and told Brown he agreed that the hiring of minorities was a problem in Shelby County schools. (Doc. 27-1 ¶38).

According to Brown, after filing his Charge, Danny Steele, who had read about it in the newspaper, started avoiding him in the school halls and treating him differently. (Doc. 27-1 ¶41). Additionally, on the heels of the 2013 verdict in George Zimmerman's case arising out of the shooting of Trayvon Martin, Steele posted to his personal Facebook page a photograph of himself in a hoodie. (Doc. 28-2; Doc. 22-5 pp. 30-38). Steele testified he was attempting to undermine the stereotypes of hoodies but admitted that staff, teachers, and parents took offense. (Doc. 22-5 p. 33). The superintendent of the Alabaster school district talked to

Steele about it, and Steele apologized and took down the photograph. (Doc. 22-5 pp. 30-38).

### E.   Brown's 2013 Job Applications

In 2013, Brown applied for two assistant principal vacancies at Oak Mountain High School. (Doc. 18-1 p. 168; Doc. 19-2 ¶17). The panel reviewed applications for the two vacancies (135 applications for one and 145 applications for the other), and it interviewed twelve (12) candidates. (Doc. 19-1). Following the interviews, the panel recommended the hiring of Mary Patton Barrett (white) and Andrew Gunn (white). (Doc. 19-2 ¶19). Barrett had a Master's degree in French, a certificate in educational leadership, thirteen (13) years of experience in public education, and leadership experience within Oak Mountain High School. (Doc. 19-2 p.45). Gunn had a Master's degree in educational leadership, nine (9) years of experience, and leadership experience at Oak Mountain High School. (Doc. 19-2 p.44). Based on the panel's post-interview rankings of the top candidates, Barrett and Gunn were the panel's consensus choices for the best-qualified candidates. (Doc. 19-2 ¶19).

Also in 2013, Brown applied for the position of assistant principal at Thompson High School. (Doc. 19-6 ¶11). The panel received 118 applications and interviewed seven (7) candidates, including Brown. (*Id.*; Doc.22-5 p.12). Again at Principal Steele's request, the three candidates who were currently on his staff at

Thompson High School were selected for interviews. (Doc.22-5 p.24; Doc. 19-6 ¶12). The panel, including Steele, ultimately selected Kelly Smitherman (white) for the position after the panel's first choice, Terry Graf, accepted a position elsewhere. (Doc. 19-6 ¶13-16). Smitherman had a Master's degree in educational leadership, fourteen (14) years of experience in public education, and leadership experience in coaching positions and youth ministry. *Id.* By comparison, Brown had a Master's degree in special education, twelve (12) years of experience in public education, a leadership certificate, and leadership experience in ministry. (Doc. 18-2 p.21).

### F.     **Brown's Second EEOC Charge**

Brown filed a second EEOC charge on June 20, 2013. (Doc. 18-2 p.62).[8] Brown alleged the Board's failure to promote him for the positions he sought in 2013 was based on his race and was in retaliation for his first EEOC charge. (*Id.*). Brown filed his First Amended Complaint with this court on July 3, 2013, to include claims regarding the 2013 positions and retaliation. (Doc. 14).

## II.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate there is a genuine dispute

---

[8] Filed under seal.

as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."   Fed. R. Civ. P. 56(c)(1)(A).  When considering a summary judgment motion, the court must view the evidence in the record in the light most favorable to the non-moving party.  *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. App'x 810, 813 (11th Cir. 2013).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

## III.   ANALYSIS

### A.   <u>Racial/Religious Discrimination</u>

Brown alleges the Board failed to hire him as principal or assistant principal because of his race or because of his religion. (Doc. 1; Doc. 34). "Under *McDonnell Douglas*, the initial burden rests on the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060-61 (11th Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Once a plaintiff has satisfied his burden, a presumption of discrimination arises and "[t]he intermediate burden of production then shifts to the employer to articulate a legitimate, non-discriminatory

explanation for not hiring him." *Id.* If the employer succeeds, the burden then shifts back to the plaintiff to proffer evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," *Frazier v. Doosan Infracore Int'l*, 479 F. App'x 925, 932 (11th Cir. 2012) (quoting *Chapman v. AI Transp.*, 229 F. 3d 1012, 1024 (11th Cir. 2000)), and that unlawful discrimination was the real reason for the conduct, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981).

As an initial matter, the Board argues that any claims based upon pre-2009 employment activities are barred by the statute of limitations. Brown concedes his claims based upon pre-2009 activities are not part of his complaint. (Doc. 26 pp.6-7). The Board's motion for summary judgment as to those claims is, therefore, due to be granted.

As for Brown's timely claims, the Board does not argue that Brown cannot establish a prima facie case. Instead, the Board proceeds to the second part of the *McDonnell Douglas* framework and argues it had legitimate, nondiscriminatory reasons for selecting candidates other than Brown. "[T]he employer's burden is satisfied if [it] simply explains what [it] has done or produc[es] evidence of legitimate nondiscriminatory reasons." *Sweeney*, 439 U.S. at 25 n.2. In response, Brown argues the Board's proffered reasons for failing to promote him into an

16

administration role are mere pretext. The court, therefore, will confine its analysis to the second and third prongs of the *McDonnell Douglas* framework.

First, the Board argues it had legitimate, nondiscriminatory reasons for selecting Shannon Rose (white) for the position of assistant principal of the Thompson Sixth Grade School in 2009. In the vacancy notice, the general job qualifications for assistant principal were stated as:

> 1. Must hold or be eligible for a valid Alabama certificate for superintendent-principal, or principal.
>
> 2. Successful experience as a teacher in public education.
>
> 3. Supervisory or administrative experience preferable.
>
> 4. Such alternatives to the above qualifications as the Board may find appropriate and acceptable.

(Doc.22-3 p.28). At that time, Brown had eight (8) years of experience as a high school special education teacher. (Doc.18-2 p.20-21). The panel recommended the hiring of Rose, who had thirteen (13) years of experience in public education, including eleven (11) years in elementary schools, two (2) years in administration, and nine (9) years with the Shelby County school system. (Doc. 22-2 p.33; Doc. 22-1 ¶15). The Board argues that prior administrative experience and grade level experience were legitimate, nondiscriminatory reasons for her selection.

In response, Brown argues that experience in a grade school was not a requirement for the position and, further, that he also had experience in a grade school during his practicum. However, this does not satisfy Brown's burden to

prove the Board's reasons were pretextual.  First, Brown has not demonstrated that he was more qualified than, or equally qualified to, Rose and has not established a disparity in qualifications so significant that no reasonable person could have chosen Rose over Brown. *Hithon v. Tyson Foods, Inc.*, 144 F. App'x 795, 800 (11th Cir. 2005) ("Although a disparity in qualifications could support an inference of discrimination," the alleged disparity must be "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Rose] over [Brown]."). Furthermore, the Board's preference for a candidate based upon qualifications not explicitly listed in the vacancy announcement but relevant to the applied-for position does not, in and of itself, demonstrate pretext. In fact, the vacancy announcement specifically stated that alternative qualifications to those listed may be considered. (Doc. 22-3 p.28).

The Board argues it had legitimate, nondiscriminatory reasons for hiring Amy Fineburg (white) for the position of assistant principal at Oak Mountain High School in 2009. Fineburg had fourteen (14) years of experience and a Master's degree in educational administration (and was a doctoral candidate in educational psychology, soon to defend her thesis). (Doc. 18-1 pp.60-61). Fineburg had also co-authored a text book and held a number of leadership roles. (Doc. 19-2). Joan Doyle, who served on the selection panel, averred that the selection committee was particularly impressed with Fineburg's prior experience on the SACS/Blue Ribbon

Schools Steering Committee because Oak Mountain High School was considering that process. *Id.* The Board argues that Fineburg's leadership experience, authorship credentials, and experience with the Blue Ribbon process were legitimate, nondiscriminatory reasons for her hiring. In response, Brown asserts that at the time of Fineburg's hiring, the administration of Oak Mountain High School included no African-Americans. He also argues that the principal at his school had never asked him to serve on any committees or in any leadership roles but that his resume does list a leadership certificate. Again, Brown has failed to prove the Board's stated reasons were pretext, as is his burden. Generally speaking, Brown has not demonstrated that his qualifications were so superior to Fineburg's "that no reasonable person, in the exercise of impartial judgment, could have chosen [Fineburg] over [Brown]." *Hithon*, 144 F. App'x at 800.

The Board also argues it had legitimate, nondiscriminatory reasons for hiring Susan Hyatt (white) to be assistant principal at Riverchase Middle School in 2009. (Doc. 18-1 p.62). Hyatt had fifteen (15) years of experience, including two (2) years at the middle school level. (Doc. 19-1 ¶7; Doc. 22-2 p.54). She had two Master's degrees (in English and in educational administration) and leadership experience. (Doc. 19-1 ¶7). Lewis Brooks, who served on the selection panel, stated that Hyatt's prior experience as a reading specialist with Alabama Reading Initiative was particularly important because Riverchase Middle School had a high

number of learners for whom English was a second language. (Doc. 19-1 ¶¶8-9). The Board argues that Hyatt's prior middle school experience, leadership experience, and literacy specialization were legitimate, nondiscriminatory reasons for her selection. Again, Brown argues that he too had middle school experience during his teaching practicum and that he was not invited into any leadership roles. Nevertheless, Brown has not demonstrated that his qualifications were so superior to Hyatt's "that no reasonable person, in the exercise of impartial judgment, could have chosen [Hyatt] over [Brown]," *Hithon*, 144 F. App'x at 800, nor has he offered any other proof to demonstrate pretext.

The Board argues it had legitimate, nondiscriminatory reasons for hiring Shellie Ritch (white) to be assistant principal at Montevallo Middle School in 2010. Ritch had prior experience at the middle school level, had served on/chaired various committees, and sponsored school clubs and teams. Sheila Lewis and Lewis Brooks, both of whom served on the selection committee, recalled that Brown's interview was not as insightful or in-depth as Ritch's interview; whereas Ritch discussed her ideas for the role and how she would perform in it, Brown's responses were brief and offered little insight into his education philosophy. (Doc. 19-1 ¶¶12-15; Doc. 19-3 ¶¶ 8-10). The Board argues that Ritch's prior middle school experience, prior leadership experience, and better performance in the interview were legitimate, nondiscriminatory reasons for hiring her. A candidate's

20

poor interview performance can constitute a legitimate, nondiscriminatory reason for an employer's decision not to hire or promote him. *Conner v. Lafarge N. Am., Inc.*, 343 F. App'x 537, 541 (11th Cir. 2009).  Brown disputes Lewis and Brooks's recollections, stating that his interview was in-depth. (Doc. 27-1 ¶23). Merely refuting the Board's subjective assessment of his performance, however, is not enough by itself to demonstrate pretext; "[a]s long as an employer's beliefs were honest, they can be mistaken without it implying that the employer acted with discriminatory motive." *Newman v. Career Consultants, Inc.*, 470 F. Supp. 2d 1333, 1346 (M.D. Ala. 2007).

The Board argues it had legitimate, nondiscriminatory reasons for hiring George Theodore (white) to be alternative programs principal/building administrator at the Alternative School in 2010. (Doc. 18-1 p.74). The qualifications for this position were listed in the job vacancy announcement as follows:

1.  A master's degree with a major in educational administration.

2.  A valid state certificate as superintendent/principal.

3.  At least five years successful experience in public education.

4.  Knowledge of principles and effective practices of alternative school programs and strategies for working with at-risk youth.

5. Such alternatives to the above qualifications as the Board may find appropriate and acceptable.

(Doc. 20-3 p.28). The panel recommended the hiring of Theodore, who held a doctorate in educational leadership, had a valid principal certificate, and had more than thirty (30) years of experience in public education, including twelve (12) years as a high school principal in the Shelby County school system. (Doc. 19-1 ¶19; Doc. 20-3 p.37). By 2010, Brown had nine (9) years of experience as a high school special education teacher. (Doc. 18-2 p.20-21). Theodore also had prior experience at the administrative level, whereas Brown did not. (Doc. 19-1 ¶18; Doc. 18-1 p.74). The Board, therefore, argues that Theodore's prior administrative experience and lengthy experience in public education were legitimate, nondiscriminatory reasons for his selection. Brown has not demonstrated that he was equally qualified or that his qualifications were so superior to Theodore's "that no reasonable person, in the exercise of impartial judgment, could have chosen [Theodore] over [Brown]," *Hithon*, 144 F. App'x at 800, and has offered no other proof to support a claim of pretext. Likewise, while Brown contends that Theodore was not qualified because he did not apply online, online applications were not required until after the spring of 2011. (Doc. 22-1 at 29-30).

The Board also argues that it had legitimate, nondiscriminatory reasons for hiring Donald Clayton (white) as assistant principal at Oak Mountain High School in 2011. (Doc. 18-1 pp.90-91). Clayton had a Master's degree in educational administration and nine (9) years of experience in public education at Oak

Mountain High School. (Doc. 22-2 pp.70-71). In comparison, Brown had a Master's degree in special education and ten (10) years of experience as a special education teacher. (Doc. 18-2 p.20-21). Clayton had also served as Oak Mountain High School's athletic director for two (2) years. (Doc. 22-2 pp.70-71). Brown did not have leadership or administrative experience but had a leadership certificate. (Doc. 18-2 p.20-21). Additionally, Joan Doyle, who served on the selection committee, stated that Brown was the weakest candidate based on his resume and his interview, that his interview was brief and provided little insight into his leadership abilities, and that his resume listed no leadership experience. (Doc. 19-2 ¶¶11-12). Brown has not demonstrated a disparity of qualifications so significant "that no reasonable person, in the exercise of impartial judgment, could have chosen [Clayton] over [Brown]," *Hithon*, 144 F. App'x at 800. Additionally, an employer's subjective belief that a plaintiff interviewed poorly constitutes a legitimate nondiscriminatory reason not to hire him. *Chapman v. Al Transport*, 229 F.3d 1012, 1035-36 (11th Cir. 2000). And Brown's testimony that another selection committee member, James Miller, told him that he had "interviewed well" is insufficient to prove the Board's stated reasons were pretextual.

The Board argues it had legitimate, nondiscriminatory reasons for hiring April Brand (white) to be assistant principal at Oak Mountain High School in 2011. (Doc. 18-1 p.82). Brand had a Master's degree in secondary education, a

certificate in educational administration, was working on her doctorate in instructional leadership, and had fifteen (15) years of experience in public education. (Doc. 19-2 ¶15). In comparison, Brown had a Master's degree in special education and ten (10) years of experience as a special education teacher. (Doc. 18-2 p.20-21). Brand also had leadership experience coaching various athletic teams, serving on numerous school committees, and working as a teacher's instructional coach, unlike Brown. (Doc. 19-2 ¶15). The Board argues that Brand's leadership experience and work as a teacher's instructional coach were legitimate, nondiscriminatory reasons for her selection. Brown argues that he had not been invited to serve in leadership roles by his principal. Brown has not presented substantial evidence that he was intentionally precluded from leadership roles for discriminatory reasons. Brown also has not demonstrated a disparity of qualifications so significant "that no reasonable person, in the exercise of impartial judgment, could have chosen [Brand] over [Brown]," *Hithon*, 144 F. App'x at 800.

The Board argues it had legitimate, nondiscriminatory reasons for hiring Angela McKnight (African-American) and Jeff Nichols (white) for the two available assistant principal positions at Thompson High School in 2012. McKnight had served as assistant principal at Thompson High School (in a 10.5-month position) for the previous six (6) years and had fifteen (15) years of total experience in public education, so the panel selected her for a 12-month contract

24

without need for an interview. (Doc. 19-6 ¶5). The Board argues that McKnight's experience as an assistant principal at Thompson High School for the previous six (6) years constituted a legitimate, nondiscriminatory reason for her retention. For the remaining 10.5-month position, the panel interviewed four (4) candidates, including Brown. *Id.* at ¶6. In fact, all three candidates for the position who were then on staff at Thompson High School were interviewed by the panel at the request of Principal Danny Steele, who was also on the selection committee. (Doc. 22-5 pp.23-26). The panel ultimately recommended the hiring of Nichols, who had a Master's degree in education and eighteen (18) years of experience in public education, including five (5) years as an assistant principal. (Doc. 19-6 ¶7). Panel members scored Brown's interview significantly lower than Nichols's (and every other candidate's). (Doc. 19-6 ¶8; Doc. 19-4 ¶18; Doc. 20-5 p.13). The Board argues that Nichols's prior experience as an assistant principal and his superior interview performance were legitimate, nondiscriminatory reasons for his hiring. Generally speaking, a candidate's poor interview performance can constitute a legitimate, nondiscriminatory reason for an employer's decision not to hire or promote him. *Conner*, 343 F. App'x at 541. However, Brown argues that the Board's proffered reasons are pretext for religious discrimination. Brown testified that members of the selection panel asked him about his church and his preaching topics during his interview. In fact, during the interview Brown used his starting

25

and building of a church as an example of his leadership skills. (Doc. 18-1 pp.99, 106-08). Brown has not presented evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," *Frazier*, 479 F. App'x at 932, and that unlawful discrimination was the real reason for the conduct, *Burdine*, 450 U.S. at 252.

The Board argues that it had legitimate, nondiscriminatory reasons for hiring Mary Patton Barrett (white) and Andrew Gunn (white) for two assistant principal vacancies at Oak Mountain High School in 2013. Barrett had a Master's degree in French, a certificate in educational leadership, thirteen (13) years of experience in public education, and leadership positions within Oak Mountain High School. (Doc. 19-2 p.45). Gunn had a Master's degree in educational leadership, nine (9) years of experience, and leadership experience at Oak Mountain High School. (Doc. 19-2 p.44). Based on the panel's post-interview rankings of the top candidates, Barrett and Gunn were the panel's consensus choices for the best qualified candidates. (Doc. 19-2 ¶19). The Board argues that Barrett and Gunn's prior leadership experiences were legitimate, nondiscriminatory reasons for hiring them. Brown has not demonstrated that his qualifications were so superior to Barrett's or Gunn's "that no reasonable person, in the exercise of impartial

judgment, could have chosen [Barrett and Gunn] over [Brown]," *Hithon*, 144 F. App'x at 800.

Finally, the Board argues that it had legitimate, nondiscriminatory reasons for hiring Kelly Smitherman (white) to be assistant principal at Thompson High School in 2013. Again at Principal Steele's request, the three candidates who were currently on his staff at Thompson High School were selected for interviews, including Brown. (Doc. 19-6 ¶12).  The panel, including Steele, ultimately selected Smitherman for the position after the panel's first choice, Terry Graf, accepted a position elsewhere. (Doc. 19-6 ¶13-16).  Smitherman had a Master's degree in educational leadership, fourteen (14) years of experience in public education, and leadership experience in coaching positions and youth ministry. *Id.* By comparison, Brown had a Master's degree in special education, twelve (12) years of experience in public education, a leadership certificate, and experience in ministry. (Doc. 18-2 p.21). The Board argues that Smitherman was selected because of her superior interview scores and her leadership experience. Brown has not demonstrated that his qualifications were so superior to Graf's "that no reasonable person, in the exercise of impartial judgment, could have chosen [Graf] over [Brown]," *Hithon*, 144 F. App'x at 800.

After carefully reviewing the record and considering the evidence as a whole, the court concludes Brown has failed to demonstrate that any of the Board's

proffered reasons for selecting other candidates were pretext for discrimination. While Brown has demonstrated that he was not hired for any of the positions for which he applied, he has not, as to any of these positions, proffered evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," *Frazier*, 479 F. App'x at 932, and that unlawful discrimination was the real reason for the conduct, *Burdine*, 450 U.S. at 252.  Accordingly, the Board's motion for summary judgment will be granted as to Brown's discrimination claims.

### B.    Retaliation

Brown alleges the Board failed to hire him for one of the three assistant principal positions open in 2013 in retaliation for his 2012 EEOC charge of discrimination. (Doc. 1; Doc. 34). To establish a prima facie case of retaliation, a plaintiff must show "(1) he engaged in statutorily protected conduct, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there is a causal connection between the protected conduct and the adverse employment action." *Walker v. Sec., U.S. Dept. of Air Force*, 518 Fed. App'x 626, 627 (11th Cir. 2013). The Board only raises an argument as to the third element. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged employment action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th

28

Cir. 2008). The burden then shifts back to the employee to show that the employer's proffered reasons were a mere pretext for its retaliatory actions. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).

To demonstrate a causal connection between the protected conduct and the adverse employment action, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). Brown filed his EEOC charge in April 2012. (Doc. 18-2 p.22). He was not selected for two assistant principal positions at Oak Mountain High School in April 2013. Brown has not presented substantial evidence that any decision-makers involved in the Oak Mountain High School hiring in April 2013 were aware of his EEOC charge. Causation can be inferred by temporal proximity, but "mere temporal proximity, without more, must be very close." *Williams v. Waste Mgmt., Inc.*, 411 Fed. App'x 226, 229 (11th Cir. 2011). A full year passed between Brown's EEOC filing and his application for the two positions at Oak Mountain High School. The retaliation claim as to these two positions is, therefore, due to be dismissed as a matter of law for lack of a causal link.

Brown also applied for, but did not receive, an assistant principal position at Thompson High School in February 2013. Principal Steele, who was on the

selection committee for the Thompson position, testified that he was aware of Brown's lawsuit, which he read about in the newspaper. (Doc. 22-5 p.26). This adverse employment action was ten (10) months after his EEOC charge – too remote to show temporal proximity. *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (holding that a three month timespan between the protected activity and the adverse action was too long). Brown asserts that the earliest newspaper article about his claim was published in December 2012 (after he filed this action), just two months before Brown applied for the Thompson High School position. (Doc. 27-1 ¶40). Even if the court were to consider this two-month gap, such a timeframe has been deemed "not very close" for purposes of evaluating the causal link. *Williams*, 411 Fed. App'x at 229-30.

In considering whether a causal link exists, courts have also looked at whether "there was an intervening pattern of antagonism and retaliation that would support an inference of a causal link." *Woods v. Bentsen*, 889 F. Supp. 179 (E.D. Pa. 1995). According to Brown, after Steele learned of Brown's EEOC charge he would avoid Brown in the school halls and treated him differently. (Doc. 27-1 ¶41). Steele acknowledged that he sometimes avoided talking with any staff or students in the hall when he was busy and "on a mission," but that he never singled Brown out or did so because of Brown's EEOC charge. (Doc. 22-5 p.26).

Even if Brown could demonstrate a causal link and establish a prima facie case of retaliation, the burden would then shift to the Board to proffer legitimate, non-retaliatory reasons for its decisions. As noted above, the Board argues that Smitherman was selected because of her superior interview and leadership experience. A candidate's poor interview performance can constitute a legitimate, nondiscriminatory reason for an employer's decision not to hire or promote him. *Conner*, 343 F. App'x at 541. Brown has not demonstrated a disparity in qualifications so significant "that no reasonable person, in the exercise of impartial judgment, could have chosen [Smitherman] over [Brown]," *Hithon*, 144 F. App'x at 800.

Brown has not carried his burden of establishing a prima facie case of retaliation because he cannot demonstrate a causal connection between his 2012 EEOC charge and the Board's subsequent—and consistent—decisions to not select him for new positions. Additionally, even if Brown had established a prima facie case of retaliation, he has not met his burden of showing the Board's legitimate, non-discriminatory reasons for not hiring him were pretextual, or that the Board was actually motivated by prohibited discrimination. Accordingly, Brown's retaliation claims are due to be dismissed as a matter of law.

31

## IV.   CONCLUSION

For all of the foregoing reasons, there are no genuine issues of material fact and the Board is entitled to judgment as a matter of law.  Accordingly, the Board's motion for summary judgment is due to be granted and Brown's claims are due to be dismissed with prejudice.  A separate order will be entered.

**DONE** this 17th day of February, 2016.

*Staci G. Cornelius*

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE